## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
## HUNTINGTON DIVISION

**Deborah Goff,**
**Nathan Rollyson, and**
**Russell Totten,**
      **Plaintiffs, on behalf of themselves and**
      **all others similarly situated**

**vs.**                                      **Case No.**  3:23-cv-00380

**Altice USA,**
**Cebridge Acquisition, LLC,**
**Cequel III Communications, I, LLC, and**
**Cequel III Communications, II, LLC, d/b/a Optimum**
**F.K.A. Suddenlink,**
      **Defendants.**

## CLASS ACTION COMPLAINT

Come now the Plaintiffs Deborah Goff, Nathan Rollyson, and Russell Totten by counsel, and on behalf of themselves and all others similarly situated aver and say:

### *Nature of Action*

1. This is a class action lawsuit brought under the West Virginia Consumer Credit Protection Act against Altice USA; Cebridge Acquisition, LLC; Cequel III Communications, I, LLC; Cequel III Communications, II, LLC, d/b/a Optimum F.K.A. Suddenlink (hereinafter collectively "Suddenlink," "Optimum," or "Defendant" as further defined below) for its illegal practice of cramming its customers' bills with illegal fees and charges in West Virginia. The Defendant is an internet provider operating throughout West Virginia. Not only are these fees and charges unauthorized and deceptive, but they also have a significant impact on consumers. They increase the cost of the services provided by the Defendant and go unnoticed by consumers, resulting in consumers

1

paying more.  Plaintiffs bring this action to enforce West Virginia law and to stop the illegal practices of the Defendant.

## *Jurisdiction and Venue*

2.  The Plaintiff, Deborah Goff, is a natural person and resident of Putnam County, West Virginia.

3.  The Plaintiff, Nathan Rollyson, is a natural person and resident of Wood County, West Virginia.

4.  The Plaintiff, Russell Totten, is a natural person and resident of Wood County, West Virginia.

5.  The Defendants, Altice USA; Cebridge Acquisition, LLC; Cequel III Communications, I, LLC; and Cequel III Communications, II, LLC d/b/a Optimum F.K.A. Suddenlink, hereinafter collectively "Suddenlink," "Optimum," or "Defendant," are corporations having their principal offices in a state other than West Virginia and which do business in West Virginia.

6.  The Defendant is a debt collector as defined by West Virginia Code § 46A-2-122(d) engaging directly or indirectly in debt collection as defined by West Virginia Code § 46A-2-122(c) within the State of West Virginia.

7.  Venue is proper for this Court and not in any arbitration forum pursuant to *Gooch v. Cebridge Acquisition LLC*, No. 2:22-cv-00184, 2023 WL 415984 (S.D. W.Va. Jan. 25, 2023) because the acts and transgressions occurred in the State of West Virginia and Plaintiff Deborah Goff resides in Putnam County, West Virginia. The Defendant transacts business in the state of West Virginia, including Putnam County.

2

### *Factual Allegations*

8. Plaintiff Deborah Goff is being charged a $3.50 fee by Defendant called a "Network Enhancement Fee" every month.

9. Plaintiff Russell Totten terminated his service with Defendant approximately two years ago but was charged a $3.50 "Network Enhancement Fee" as part of his internet service every month for many years.

10. Plaintiff Nathan Rollyson was also charged a $3.50 "Network Enhancement Fee" as part of his internet service every month for many years.

11. This fee is an unfair way of collecting additional funds from Plaintiffs and other class members.

12. Defendant claims that this fee is added to customers' bills to supposedly cover the costs associated with improving and upgrading their network infrastructure.

13. The fee is not disclosed in advertised prices but instead is crammed into the cost of Plaintiffs' monthly bills after service commences.

14. Moreover, Plaintiffs already pay a monthly fee for internet and other services that should cover the cost of improving and maintaining the network.

15. The "network enhancement fee" is further unfair and misleading because it implies an obligation that must be paid by the consumer for regulatory or service charges assessed by the government - specifically that it is a passthrough for taxes and fees.

16. Upon information and belief, the funds collected by the network enhancement fee are not segregated and used exclusively for network enhancement purposes.

17. Plaintiffs Russel Totten and Nathan Rollyson were charged for Business and Occupation (B&O) tax over and above the amount charged by the local community.

18. For example, Plaintiff Nathan Rollyson was charged $1.71 in total B&O taxes for the Parkersburg area on his February 2020 statement. This charge included 84 cents for television, 75 cents for internet, and 12 cents for phone. Mr. Rollyson's total monthly charges for that billing period were $159.96.

19. The B&O tax rate for Parkersburg, West Virginia for services such as television, phone, and internet was 90 cents per $100 charged.

20. The correct amount of B&O tax owed for Parkersburg on a $159.96 bill would be $1.44 and not $1.71.

21. This improper billing adds up to a significant amount of money among all the class members.

22. None of these fees or charges are expressly authorized by law.

**Class Allegations**

23. Plaintiffs bring this action individually and on behalf of all others similarly situated.

24. The classes of consumers represented by Plaintiffs in this action are defined as:

**Network Enhancement Fee Subclass:** All consumers with West Virginia addresses who, within the applicable statute of limitations preceding the filing of this action through the date of class certification, were charged a network enhancement fee.

**B and O Tax Subclass:** All consumers with West Virginia addresses who, within the applicable statute of limitations preceding the filing of this action through the date of class certification, were charged a fee for a B & O tax greater than the amount charged by their place of residence.

25. Defendant Suddenlink has corporate policies and procedures regarding the collection of debts allegedly owed by West Virginia consumers such as Plaintiffs. Defendant carries out its policies and procedures through the use of standardized collection activities.

26. The class is so numerous that joinder of all class members is impracticable.

4

27. This action involves questions of law and fact common to the class which predominate over questions affecting individual class members.

28. Plaintiffs' claims are typical of the claims of the class because, among other things, Plaintiffs, like the other members of the class, were subjected to threats to collect fees, costs, or collection measures.

29. Plaintiffs have displayed an interest in vindicating the rights of the class members, will fairly and adequately protect and represent the interest of the class, and are represented by skillful and knowledgeable counsel. Plaintiffs' interests do not conflict with those of the class and the relief sought by Plaintiffs will inure to the benefit of the class generally.

30. The questions of law and fact that are common to the class members predominate over questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy between the class members and Defendant.

31. The actions of Defendant are generally applicable to the class as a whole and to Plaintiffs. For example, the class members can prove the elements of their claims against Defendant for violations of the WVCCPA on a class-wide basis using the same evidence that Plaintiffs and individual class members would use to prove those claims in individual civil actions.

32. Additionally, the damages or other financial detriment suffered by individual class members is relatively small compared to the burden and expense that would be required to individually litigate each of the class member's claims against Defendant and it would be impracticable for the class members to individually seek redress for the Defendant's wrongful conduct.

33. Even if the members of the class could afford individual litigation, given the expected size

of the class, separate litigation of each class member's claims against Defendant would create the potential for inconsistent and/or contradictory judgments, and cause delay and increase the expenses for the parties and the court in adjudicating the claims against Defendant. Conversely, a class action will prevent far fewer management difficulties, provide the benefits of a single adjudication, conserve time, effort and expense, employ comprehensive and cohesive supervision by a single court, and provide a forum for small claimants.

34. The prosecution of separate actions by the individual members of the class would create a risk of inconsistent or varying adjudications with respect to individual class members which would establish incompatible standards of conduct for Defendant. Moreover, the likelihood that individual members of the class will prosecute separate actions is remote due to the time and expense necessary to conduct such litigation.

35. Defendant has acted on grounds generally applicable to the class, thereby making appropriate final injunctive relief with respect to the members of the class as a whole.

36. Any difficulties in management of this case as a class action are outweighed by the benefits that a class action has to offer with respect to disposing of common issues of law and fact on issues affecting a large number of litigants.

37. The damages in this case are set by statute and generally preclude the necessity of a case-by-case assessment of damages by the court. To the extent case-by-case assessment is necessary, Defendant maintains computerized individual account information, and that information can easily be reviewed and assessed electronically. Plaintiffs are unaware of any litigation concerning this controversy already commenced by others who meet the criteria for class membership as described above.

38. Plaintiffs' claims are typical of those of the class as a whole, and Plaintiffs are capable of and willing to represent the other members of the class.

## COUNT I – CLASS ALLEGATION
### *Violations of the West Virginia Consumer Credit and Protection Act*

39. The Plaintiffs incorporate the previous paragraphs as if fully set forth herein.

40. By charging the Network Enhancement Fees and B&O tax fees as outlined above, the Defendant has engaged in repeated violations of Article 2 of the *West Virginia Consumer Credit and Protection Act*, including but not limited to:

    a.  using unfair or unconscionable means to collect a debt from Plaintiffs in violation of West Virginia Code §46A-2-128;

    b.  collecting or attempting to collect fees, which are neither expressly authorized by any agreement creating or modifying the obligation or by statute or regulation, in violation of West Virginia Code § 46A-2-128(d);

    c.  utilizing fraudulent, deceptive or misleading representations or means regarding Plaintiffs' debt in violation of West Virginia Code §46A-2-127;

    d.  representing that an existing obligation of the consumer may be increased by the addition of attorney's fees, investigation fees, service fees or any other fees or charges when in fact such fees or charges may not legally be added to the existing obligation in violation of West Virginia Code § 46A-2-127(g);

    e.  falsely representing or implying the character, extent, or amount of a claim against a consumer in violation of West Virginia Code § 46A-2-127(d); and

    f.  threatening to take any action prohibited by Chapter 46A of the West Virginia Code or other law regulating the debt collector's conduct in violation of West

Virginia Code § 46A-2-124(f).

## COUNT II – CLASS ALLEGATION
### *Violations of the West Virginia Consumer Credit and Protection Act*

41. The Plaintiffs incorporate the previous paragraphs as if fully set forth herein.

42. By adding, charging and concealing the true nature of the Network Enhancement Fees and B&O tax fees, the Defendant has engaged in repeated violations of Article 6 of the *West Virginia Consumer Credit and Protection Act* by engaging in unfair or deceptive acts or practices.

43. The Defendant has engaged in deceptive acts by adding and charging Network Enhancement Fees and B&O tax fees without clearly disclosing these charges to consumers.

44. The Defendant engaged in unfair or deceptive practices by concealing the true nature of the Network Enhancement Fees and B&O tax fees from consumers and by assessing these fees when they are not allowed under the law.

### DEMAND FOR RELIEF

Plaintiffs demand from the Defendant:

a. Actual damages for the violations of the WVCCPA as authorized by *West Virginia Code* § 46A-5-101(1) and § 46A-6-106;

b. Statutory damages in the maximum amount authorized by *West Virginia Code* § 46A-5-101(1) and § 46A-6-106 as adjusted for inflation pursuant to *West Virginia Code* § 46A-5-106;

c. Plaintiffs' cost of litigation, including attorney fees, court costs and fees, pursuant to *West*

*Virginia Code* § 46A-5-104;

d. The Plaintiffs be granted general damages for Defendant's conduct alleged; and

e. Such other relief as the Court shall deem just and proper under the attendant circumstances.

**PLAINTIFFS DEMAND A JURY TRIAL ON ALL ISSUES SO TRIABLE**

> **DEBORAH GOFF,**
> **NATHAN ROLLYSON, AND**
> **RUSSELL TOTTEN,**
> **ON BEHALF OF THEMSELVES AND ALL**
> **OTHERS SIMILARLY SITUATED**
> BY COUNSEL

BY:    ***/s/ Benjamin M. Sheridan***
      Benjamin M. Sheridan (#11296)
      Jed Nolan (#10833)
      Klein & Sheridan, LC
      3566 Teays Valley Road
      Hurricane, WV 25526
      Tel. (304) 562-7111
      ben@kleinsheridan.com
      jed@kleinsheridan.com

      Jonathan R. Marshall (WVSB #10580)
      Jack Bunn (WVSB #14242)
      209 Capitol Street
      Charleston, WV 25301
      Tel. (304) 345-6555

      Patricia M. Kipnis (WVSB #12896)
      1622 Locust Street
      Philadelphia, PA 19102
      Tel. (215) 274-9331

      *Counsel for Plaintiffs and Proposed Class*
      *Members*