## IN THE UNITED STATES DISTRICT COURT FOR
## THE SOUTHERN DISTRICT OF WEST VIRGINIA

### HUNTINGTON DIVISION

JACKIE LANE,
on behalf of herself and all others similarly situated,

                        Plaintiff,

v.                                        CIVIL ACTION NO. 3:23-0380

ALTICE USA,
CEBRIDGE ACQUISITION, LLC,
CEQUEL III COMMUNICATIONS, I, LLC, and
CEQUEL III COMMUNICATIONS, II, LLC,
doing business as Optimum formerly known as Suddenlink,

                        Defendants.

### MEMORANDUM OPINON AND ORDER

Pending before the Court is a Renewed Motion to Compel Arbitration and to Stay Litigation by Defendants Altice USA, Cebridge Acquisitions, LLC, Cequel III Communications, I, LLC, Cequel III Communications, II, LLC (collectively referred to as "Suddenlink").[1] ECF No. 18. Plaintiff Jackie Lane opposes the motion. For the following reasons, the Court **DENIES** part of the motion **AS MOOT** and the remainder of the motion **WITHOUT PREJUDICE**.

### I.
### FACTUAL AND
### PROCEDURAL BACKGROUND

On May 8, 2023, Deborah Goff, Nathan Rollyson, and Russell Totten filed a Class Action Complaint against Suddenlink alleging that certain fees and taxes on their bills for internet services violate the West Virginia Consumer Credit and Protection Act, West Virginia Code

---

[1]Suddenlink now is known as Optimum.

§ 46A-2-101, *et seq.* Thereafter, Suddenlink filed its first Motion to Compel Arbitration and to Stay Litigation, and Plaintiffs filed a Motion to Amend Complaint. With the consent of the parties, the Court granted Plaintiffs' motion and denied Defendants' motion as moot. Plaintiffs' amendments included the addition of Jackie Lane as a Plaintiff.

On October 27, 2023, Suddenlink filed the pending Renewed Motion to Compel Arbitration and to Stay Litigation. Before filing a Response to Suddenlink's motion, Plaintiffs filed a Notice of Voluntary Dismissal of Claims by Plaintiffs Goff, Rollyson and Totten. Thus, to the extent Suddenlink's motion seeks to compel arbitration and to stay the litigation as to their specific claims, the Court **DENIES** the motion **AS MOOT**. As to the remaining claims by Plaintiff Lane, the parties disagree as to whether an arbitration agreement exists and, if so, whether it is enforceable.

In the First Amended Class Action Complaint, Plaintiff Lane claims she was "charged a 'Network Enhancement Fee' as part of her internet service every month during the duration of her service, including as recently as her last bill." *First Am. Class Action Compl.* ¶12, ECF No. 17. Plaintiff asserts "[t]he fee is not disclosed in advertised prices but instead is crammed into the cost of [her] monthly bills after service commences." *Id.* ¶16. Additionally, Plaintiff complains that Suddenlink misleads consumers into believing the fee is imposed by the government, which she claims it is not and, in the end, Suddenlink does not even exclusively use the fee to enhance its network. *Id.* ¶¶18, 19. Moreover, Plaintiff contends that other monthly fees she pays "should cover the cost of improving and maintaining the network." *Id.* ¶17.

In its motion, Suddenlink insists the merits of Plaintiff's claim is not for this Court to decide. Rather, the parties have a binding arbitration agreement that should be enforced. Suddenlink submitted an affidavit showing that Plaintiff has been a Suddenlink customer since September 2011. *See* Aff. of Travis Lucas ¶8, ECF No. 18-3. Suddenlink asserts that, on or around June 14, 2022, which was prior to the filing of this lawsuit, Plaintiff Lane clearly was alerted to the arbitration provision when it sent her an email with a subject line providing: "Notice of changes to our Terms of Service." Aff. of Nicole Averill ¶¶6, 7, ECF No. 18-2. The body of the email provided:

> **An update to our Terms of Service**
> We're updating the Binding Arbitration provision of our Residential Services Agreement, effective July 20, 2022. You can access and read the updated arbitration provision at www.suddenlink.com/residential-services-agreement.

*Id*. ¶7 (hyperlink provided in original). Suddenlink maintains that, prior to this email, Plaintiff repeatedly had consented to its Residential Services Agreement (RSA) referenced in the email by paying her Suddenlink bills. In support of its position, Suddenlink submitted copies of her billing statements from September 2019 through September 2023, which generally contain the following provision on the second page:

> **Payment Information**
> Please allow up to 3 days to process your payment once it is received. Payment of your bill confirms your acceptance of the Residential Services Agreement, viewable at www.suddenlink.com/terms-policy.

Aff. of Travis Lucas, Ex. E, ECF No. 18-4, at 18. (hyperlink provided in original).[2]

---

[2]This language appears in the first billing statement submitted for the billing period from October to November 2019. As time passed, some of the language on the billing statements changed slightly and the hyperlink changed from Suddenlink to Optimum. However, these differences are inconsequential to the present motion. The remainder of the billing statements may be found at ECF No. 18-4, at 16-127.

Suddenlink further attached copies of its website versions of the 2019, 2021, and 2022 RSAs referenced in her billing statements.[3] The second paragraph on the first page of all three RSAs has the following language in all capital letters and bold print:

> **THIS AGREEMENT CONTAINS A BINDING ARBITRATION AGREEMENT THAT AFFECTS YOUR RIGHTS, INCLUDING THE WAIVER OF CLASS ACTIONS AND JURY TRIALS. THE AGREEMENT ALSO CONTAINS PROVISIONS FOR OPTING OUT OF ARBITRATION. PLEASE REVIEW IT CAREFULLY.**

ECF No. 18-1, at 5, 22, 38. Thereafter, all three documents describe the arbitration provision with the heading "**Binding Arbitration. <u>Please read this section carefully. It affects your rights</u>**," followed by language in the first section of paragraph 24, under the General Terms of Service Applicable to Services, providing: "**YOU AGREE THAT BY ENTEREING INTO THIS AGREEMENT, YOU AND SUDDENLINK EACH WAIVE THE RIGHT TO A TRIAL BY JURY AND THE RIGHT TO PARTICIPATE IN A CLASS, REPRESENTATIVE, OR PRIVATE ATTORNEY GENERAL ACTION**." *Id.* at 10, 27, and 43 (bold, underlining, and capitalization original). Similar language appears again under paragraph 24, stating: "<u>Waiver of Class and Representative Actions</u>. **YOU AGREE TO ARBITRATE YOUR DISPUTE AND TO DO SO ON AN INDIVIDUAL BASIS; CLASS, REPRESENTATIVE, AND PRIVATE ATTORNEY GENERAL ARBITRATIONS AND ACTION ARE NOT PERMITTED**." *Id.* at 12 subsection (i), 29 subsection (h), and 44 subsection (g) (underlining, bold, and capitalization original).[4]

---

[3] *See* Aff. of William Heberer, Ex. A (July 20, 2022 version), Ex. B (October 1, 2021 version), and Ex. C (September 19, 2019 version), ECF No. 18-1. Suddenlink also submitted the July 20, 2022 version that appeared on the Optimum website. *Id.* at Ex. D.

[4] The phrase "<u>Waiver of Class and Representative Actions</u>" is bold in the 2022 version, but not in the 2021 or 2019 versions.

Despite these documents, Plaintiff argues that arbitration should not be enforced because Suddenlink did not identify what agreement it is seeking to enforce. Additionally, Plaintiff asserts whatever version Suddenlink believes is operative likely is procedurally and substantively unconscionable, as what was found in *Gooch v. Cebridge Acquisition, LLC*, Civ. Act. No. 2:22-00184, 2023 WL 415984 (S.D. W. Va. Jan. 25, 2023). In the alternative, Plaintiff argues that, if the Court is inclined to find an enforceable arbitration agreement exists between the parties, the Court should stay this action pending the outcome of the appeal of the lower court's decision in *Gooch*, as a decision by the Fourth Circuit may have a decisive impact on this case.

## II.
## DISCUSSION

In *Gooch*, the plaintiff filed an action against Suddenlink[5] on March 14, 2022, alleging several causes of action. 2023 WL 415984, at *2. The plaintiff had been a Suddenlink customer since July of 2017 and, when she activated her service, she had agreed to the terms of the RSA, which included an arbitration agreement. *Id.* at *1. In determining whether arbitration should be enforced, the Honorable Thomas E. Johnston, Chief Judge of this District, initially recognized that, under the FAA, "a written agreement to arbitrate in any contract involving interstate commerce 'shall be valid, irrevocable, and enforceable' unless there are grounds for revocation in law or equity." *Id.* (quoting 9 U.S.C. § 2); also citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). A party may compel arbitration under the FAA if the movant can prove four elements: "'(1) the existence of a dispute between the parties, (2) a

---

[5]Defendants Altice USA, Cebridge Acquisition, LLC, Cequel III Communications I, LLC, and Cequel III Communications II, LLC were collectively referred to as Suddenlink. 2023 WL 415984, at *1.

written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction . . . to interstate or foreign commerce, and (4) the failure, neglect or refusal of the [party] to arbitrate the dispute.'" *Id.* (quoting *Am. Gen. Life & Accident Ins. Co. v. Wood*, 429 F.3d 83, 87 (4th Cir. 2005) (other citations and internal quotations omitted)). On the other hand, a party opposing arbitration and "seeking a jury trial must make an unequivocal denial that an arbitration agreement exists,'" and "'show genuine issues of material fact regarding the existence of an agreement to arbitrate.'" *Id.* (quoting *Galloway v. Santander Consumer USA, Inc.*, 819 F.3d 79, 84 (4th Cir. 2016) (*quoting Chorley Enters., Inc. v. Dickey's Barbecue Rests., Inc.*, 807 F. 3d 553, 564 (4th Cir. 2015) (some internal quotation marks omitted)).

In considering these factors, the district court had no difficulty finding that the first, third, and fourth elements were satisfied. *Id.* at *3. However, as to the second factor, the plaintiff argued she never entered into an agreement to arbitrate with Suddenlink or, if she did, the RSA effective July 20, 2022, as the most recent version, is unconscionable and not enforceable. On the other hand, Suddenlink argued the July 2022 RSA is irrelevant because the RSA in effect at the time she filed her lawsuit in March 2022 applied. Upon review, the district court disagreed with both parties and found the July 2017 RSA was the operative agreement for two reasons: (1) the plaintiff agreed to the 2017 RSA when she activated her service and (2) "Suddenlink's attempts to unilaterally modify the terms thereafter were ineffective." *Id*. at *4.

When the plaintiff activated her service in 2017, the RSA provided that Suddenlink could, "in its sole discretion, change, modify, add or remove portions of [the RSA] at any time by posting the amended Agreement on the Company website at www.suddenlink.com, or by giving

Customer notice in accordance with Section 22 of [the RSA]." *Id.* at *1 (citation omitted). Suddenlink argued the plaintiff had consented in different ways to changes to the arbitration agreement after 2017. *Id.* at *7. First, Suddenlink asserted that the plaintiff had signed a mobile-device screen during service visits, stating she agreed to the Terms and Conditions of Service available at a provided website. Second, her billing statements "provided that, '[p]ayment of this bill confirms your acceptance of the Residential Services Agreement, viewable at suddenlink.com/terms-policy.'" *Id.* (citation omitted). Third, the plaintiff received an "email that instructed her to '[v]isit suddenlink.com/terms-and-policies for information about your Suddenlink services, including General Terms & Conditions of Service.'" *Id.* (citation omitted). However, the district court found none of these factors were effective to establish that the plaintiff had agreed to revisions of the 2017 agreement.

In reaching this conclusion, the district court recognized that West Virginia law requires the parties to have mutually assented to the change and, in order for there to be mutual assent to a modification of a unilateral contract, there must be reasonable notice. *Id.* at *7-8 (quoting, in part, *Hogue v. Cecil I. Walker Machinery Co.*, 431 S.E.2d 687, 691 (W. Va. 1993) (stating "a subsequent modification may be made unilaterally by the employer, but to make the modification effective the employer is required to give employees reasonable notice of the changes). For instance, *Gooch* cited the West Virginia Supreme Court of Appeals' decision in *Citizens Telecommunications Company of West Virginia v. Sheridan*, 799 S.E.2d 144 (W. Va. 2017), finding that Frontier reasonably had alerted its customers to a unilateral revision in its arbitration provision by notifying them of the changes in a billing statement and providing them a paper copy of the Terms and Conditions, including the arbitration provision, with their billing

statements. *Id*. 8-9. In that situation, the West Virginia Supreme Court held Frontier's "'customers assented to the changes by virtue of continuing to subscribe to Frontier's Internet service after the reasonable notice was provided.'" *Id*. at 10 (quoting *Sheridan*, 799 S.E.2d at 152).

To the contrary, the district court in *Gooch* found such notice was lacking as neither the mobile device the plaintiff signed nor the billing statements or email she received notified her that Suddenlink had made any changes to its arbitration provision. Instead, they "merely reminded her that she was agreeing to the terms of the RSA without any indication that those terms had changed at all." *Id*. Additionally, the district court noted that Suddenlink's modification clause required its customers to "immediately" opt out of its revised RSAs if they objected to the terms, but the ability of a customer to do so without any notice of a change would be "'wholly fortuitous'" as customers would need to continuously check the website to look for changes. *Id*. at *11 (quoting *Gaglidari v. Denny's Rests., Inc.*, 815 P.2d 1362 (Wash. 1991)). Therefore, the district court concluded that Suddenlink's attempts to modify the 2017 RSA were ineffective and the 2017 version was the operative agreement. *Id*. at *11.

The district court next turned to the plaintiff's argument that the 2017 RSA was unconscionable. Under West Virginia law, a court may refuse to enforce a contract when the facts and circumstances of the case before it are "'*both* procedurally and substantively unconscionable,' but 'both need not be present to the same degree.'" *Id*. (quoting *Brown v. Genesis Healthcare Corp. (Brown I)*, 724 S.E.2d 250, 289 (emphasis added in *Gooch*)). "Procedural unconscionability requires gross inadequacy in bargaining power" while "[s]ubstantive unconscionability involves unfairness in the contract itself and whether a contract term is one-sided and will have an overly

harsh effect on the disadvantaged party." *Id*. at **11, 15 (internal quotation marks and citations omitted). With respect to procedural unconscionability, the district court found the agreement procedurally unconscionable given "the unequal sophistication between the parties, adhesive nature of the contract, unduly complex terms, and lack of opportunity to review the terms of the 2017 Arbitration Agreement demonstrate[ing] a gross inadequacy in bargaining power, that resulted in the lack of a real and voluntary meeting of the minds." *Id.* at *15 (internal quotation marks and citation omitted). Additionally, the district court found a determination of substantive unconscionability was supported by the agreement's prohibition of punitive damages and its imposition of procedural hurdles upon the plaintiff that did not apply equally to Suddenlink. *Id.* at **19-20. Therefore, given both the procedural and substantive unconscionability of the agreement, the district court concluded the 2017 agreement "is unconscionable and unenforceable." *Id.* at *22. Suddenlink has appealed the *Gooch* decision, and its appeal is pending before the Fourth Circuit Court of Appeals.

For her part, Plaintiff in this case first argues it is unclear what version of the RSA Suddenlink even believes applies to her claims. The Court disagrees and finds it clear that Suddenlink is attempting to enforce the July 2022 RSA because it was in effect when she filed her lawsuit. Nevertheless, the Court disagrees with Suddenlink that it has definitively shown that the July 2022 RSA actually is the operative agreement. Given the evidence submitted by Suddenlink, the Court finds at least three different scenarios could exist with differing results as to whether Plaintiff ever agreed to the 2022 RSA.

Here, Plaintiff signed up for service in 2011. Unlike *Gooch*, Suddenlink submitted no evidence showing that, at the time she signed up for service, Plaintiff agreed to an RSA that contained a binding arbitration provision. Instead, the first RSA Suddenlink provided the Court is the 2019 version. At that time, Plaintiff's billing statements provided, in part: "Payment of your bill confirms your acceptance of the Residential Services Agreement, viewable at www.suddenlink.com/terms-policy." Aff. of Travis Lucas, Ex. E (hyperlink provided in original). It is unknown to the Court whether Plaintiff had agreed to an RSA prior to 2019 and, if so, whether that RSA contained an arbitration agreement. If the Court assumes that, at some point prior to 2019, Plaintiff had agreed to an RSA with an arbitration provision, whether or not the billing statements were sufficient to notify Plaintiff of modifications to the arbitration agreement is irrelevant because Suddenlink's June 14, 2022 email unmistakably notified Plaintiff it was amending the arbitration provision effective July 20, 2022, and it provided Plaintiff a hyperlink to access the provision. *See* Aff. of Nicole Averill ¶6, 7, ECF No. 18-2. Thus, in that situation, the Court would find the July 20, 2022 RSA would be the operative agreement.[6]

If, on the other hand, Plaintiff never entered into an RSA prior to 2019, the Court finds the discussion in *Gooch* regarding the effect of the language on the billing statements

---

[6]In opposition to Suddenlink's motion, Plaintiff comments that Suddenlink offered no proof that she ever received the June 14, 2022 email. However, Suddenlink submitted the Affidavit of Mr. Averill stating that the email was sent, and Plaintiff does not actually deny that she received the email. Accordingly, the Court finds there is a presumption that the email was received. *See Gezu v. Charter Commc'ns*, Civ. Act. No. 3:20-01476-G-BT, 2021 WL 419741, at *6 (N.D. Tex. Jan. 7, 2021), report and recommendation adopted, 2021 WL 410000 (N.D. Tex. Feb. 5, 2021), aff'd, 17 F.4th 547 (5th Cir. 2021) ("A presumption of receipt is created when a party provides credible evidence that it properly sent a message to the recipient. It is not necessary to show that the other party *actually received* the notice, only that the message was sent in keeping with regular procedures. Once a presumption of receipt is established, the burden then shifts to the other party to rebut the presumption with credible evidence." (emphasis original; citations omitted)).

distinguishable from this case. In *Gooch*, the issue presented was whether the billing statements were sufficient to give notice to the plaintiff of *modifications* to an existing arbitration agreement. Here, if there was no agreement before 2019, the issue becomes whether Plaintiff's payment of her bill was sufficient to *create* a binding agreement between the parties. In other words, although *Gooch* found there could not be mutual assent to modifications where Suddenlink did not provide consumers with reasonable notice that it was making those changes, the issue under this scenario is whether the billing statement was sufficient to create a contract that otherwise did not exist when Plaintiff paid her bill. The Court finds the billing statement very clearly covered this situation by providing that, if Plaintiff pays her bill, she is accepting the terms of the RSA at the hyperlink provided to her. As the 2019 RSA included the arbitration provision, Plaintiff also would have agreed to arbitration. *See Frashuer v. Altice USA, Inc.*, Civ. Act. No. 2:21-17, 2023 WL 195523, *2 (N.D. W. Va. Jan. 17, 2023) (finding the plaintiff had accepted Suddenlink's RSA, containing an arbitration provision, when he paid his bill and his billing statement contained the same language at issue here).[7] Thus, as in the first scenario, it again does not matter whether the billing statements were sufficient to modify the terms of the arbitration agreement, because the email Plaintiff was sent on June 14, 2022, provides Plaintiff with reasonable notice that the agreement was revised effective July 20, 2022. Therefore, under this second scenario, the 2022 RSA would be operative.

---

[7]The *Frashuer* court focused on whether there was an offer and acceptance created by the billing statement. The district court also rejected the plaintiff's argument that Suddenlink attempted to modify the terms of service to include an arbitration provision after the plaintiff had paid his bill in October 2019, as not supported by the record. *Id.* at *3.

However, there is a potential for a third scenario in which an RSA existed between Plaintiff and Suddenlink before 2019, but it did not contain an arbitration provision. Under the holding in *Gooch*, the billing statements would be insufficient to modify the terms of that original agreement. Additionally, if there never was an arbitration agreement between the parties, the June 14, 2022 email alerting Plaintiff that it was updating the RSA's Binding Arbitration provision would not be relevant to her as there never was an arbitration agreement between the parties that could be updated. Thus, under this third scenario and assuming the decision in *Gooch* is upheld regarding the ineffectiveness of the billing statement, the Court would find no binding arbitration agreement exists between the parties.[8]

In light of these three possibilities, the Court finds there is a genuine issue of material fact as whether an agreement to arbitrate exists. "Section 4 of the FAA requires the court to conduct a trial of the issue if there are 'sufficient facts' support[ing] a party's denial of an agreement to arbitrate." *Rowland v. Sandy Morris Fin. & Est. Plan. Servs., LLC*, 993 F.3d 253,

---

[8]With its motion, Suddenlink also submitted an email it sent to Plaintiff on January 12, 2022. Aff. of Travis Lucas, Ex. F, ECF No. 18-4, at 157-59. This email indicates Plaintiff had a change to her internet service and, in section "3" of the email, under the heading "Helpful Information," it provides:

> Visit suddenlink.com/terms-and-policies for information about your new Suddenlink services, including our General Terms & Conditions of Service, Customer Privacy Notice, E-911 information for Phone customers and more.

*Id.* at 158 (hyperlink provided in original). Unlike the situation in *Gooch* in which the plaintiff had to sign an agreement containing an arbitration provision in order to activate service, there is no indication that Plaintiff signed anything indicating her service upgrade was contingent upon her agreeing to the most recent "General Terms & Conditions" posted on Suddenlink's website, and the Court finds this email alerting Plaintiff to "Helpful Information" is not an offer and acceptance sufficient to create a contract.

258 (4th Cir. 2021) (internal quotation marks and citation omitted). Additionally, "[t]he Supreme Court has also held that when the parties disagree as to whether an agreement to arbitrate has been formed, 'the dispute is generally for courts to decide.'" *Id.* (quoting *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 296 (2010). Although this Court's role is limited in the context of arbitrations, this case falls squarely within its "obligation to determine whether a contract was formed under 9 U.S.C. § 4." *Id.* Therefore, this Court must fulfill its gatekeeper role and allow discovery on the contract formation issue.[9]

### III.
### CONCLUSION

Accordingly, for the foregoing reasons, the Court **DENIES WITHOUT PREJUDICE** Suddenlink's Renewed Motion to Compel Arbitration and to Stay Litigation as to Plaintiff Lane. As Plaintiffs Goff, Rollyson and Totten are no longer parties to this action, the Court **DENIES AS MOOT** the motion as to them. The Court will enter a separate Order and Notice.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties.

ENTER:        February 26, 2024

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE

---

[9]As the Court does not know what, if any, of the arbitration provisions applies, the Court declines at this point to address whether a particular provision is unconscionable.

-13-